IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MORAN INDUSTRIES, INC. | : | Case No. 4:12-cv-01435 |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | (Judge Brann) |
| | : | |
| THE NETHERLANDS | : | |
| INSURANCE, CO. | : | |
| | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**
February 19, 2014

Before the Court is The Netherlands Insurance Company's ("Defendant" or "Netherlands") Motion for Summary Judgment (ECF No. 14) on the Complaint (ECF No. 1, Ex. 1) filed by Moran Industries, Inc. ("Plaintiff" or "Moran"). Moran initially filed the Complaint in the Court of Common Pleas of Lycoming County, Pennsylvania, and the Defendant removed the action to this Court on July 25, 2012, pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1446 (ECF No. 1).

Moran's Complaint alleges two state-law counts: one count of assumpsit and one count of bad faith insurance practices. Def.'s Notice Removal, Ex. 1, at 4–5, July 25, 2012, ECF No. 1 [hereinafter "Pl.'s Compl."]. After filing an Answer with affirmative defenses (ECF No. 4) and completing some discovery, the

1

Defendant filed a Motion for Summary Judgment on January 7, 2013 (ECF No. 14).  Netherlands asserts it is entitled to judgment in its favor as a matter of law on both counts.  Def.'s Mot. Summ. J., Jan. 7, 2013, ECF No. 14.  The matter has been fully briefed and is ripe for disposition.

In accordance with the following reasoning, the Defendant's Motion for Summary Judgment is denied in part and granted in part.  Moran's bad faith claim is dismissed.

## I.    BACKGROUND

Moran Industries, Inc. is a Pennsylvania corporation with principle offices in Watsontown, Northumberland County, Pennsylvania.  Pl.'s Compl., ¶ 1.  Moran owns a building ("the Property") located at 202 East Penn Street, Watsontown, Pennsylvania.  The Property sustained a fire on August 19, 2009.  Def.'s Statement Facts ¶ 6, Jan. 7, 2013, ECF No. 16 [hereinafter Def.'s SOF].

The Property was a warehouse Moran leased to a tenant, who was authorized to do work in the space.  In the course of the work, the siding near the roof line caught on fire.  Def.'s SOF, ¶ 11.  The fire department arrived and extinguished the fire, but not before the building sustained damage.  Def.'s SOF, ¶ 12.

Prior to the fire, and at all times relevant hereto, Moran maintained an insurance policy on the building through The Netherlands Insurance Company.

2

Def.'s SOF, ¶ 7; Pl.'s Statement Facts ¶ 7, Jan. 18, 2013, ECF No. 18 [hereinafter Pl.'s SOF].  Netherlands is a New Hampshire corporation with its principle place of business at 175 Berkeley Street, Boston, Massachusetts.  Def.'s Ans., ¶ 2. Moran purchased the policy through Netherlands' authorized agent, Rick Williams ("Williams").  Pl.'s SOF, ¶ 10.

The Parties dispute the contents of the insurance policy on the date of the August 14, 2009 fire.  Moran submits, through the sworn affidavit of its president, John D. Moran, Jr., that the policy it received from Netherlands through Williams consisted of seventy (70) pages of declarations describing the types and limits of coverage and the real estate, personalty, and persons covered.  Pl.'s SOF, ¶ 7; Aff. Opp'n Mot. Summ. J., Ex. 1, ¶ 5, Jan. 25, 2013, ECF No. 21 [hereinafter Moran Aff.].

Netherlands, in contrast, alleges that the policy it provided was over two-hundred (200) pages long.  Most pertinently, Netherlands alleges that the policy it provided and that Moran assented to included a limitations clause.  The clause purported to require that any action brought against Netherlands under the policy be filed "within 2 years after the date on which the direct physical loss or damage occurred."  Def.'s SOF, ¶ 8, Ex. C, at 195.  Moran adamantly denies that this provision was ever part of the policy it received or assented to.

After the fire at the Property on August 14, 2009, Moran alleges it reported notice of the loss to its insurance agent, Williams, within twenty-four (24) hours of its occurrence.  Pl.'s SOF, ¶ 10.  According to the deposition of Moran's employee working on the issue, Michael Gilger ("Gilger"), however, Moran "didn't file the claim . . . until a year later—more than a year later."  Pl.'s Aff. Opp'n Mot. Summ. J., Ex. C, Dep. Michael Gilger 106, Jan. 25, 2013, ECF No. 21-3.

Netherlands demonstrated it received a report of the claim filed on November 2, 2010, more than a year after the fire.  Def.'s SOF, ¶ 10; Def.'s Reply Br. Supp. Mot. Summ. J. 1, Ex. 2, Feb. 8, 2013, ECF No. 23-2 [hereinafter Def.'s Reply Br.].  The claim was then assigned to Netherlands' insurance adjuster Laura Jo Gallagher ("Gallagher"), who spoke with Gilger on November 4, 2010, two days after the claim was submitted to Netherlands.  Def.'s SOF, ¶ 10.  On November 12, 2010, Gallagher inspected the property with Gilger.  The parties disagree as to the extent of the damage.

The parties engaged in various communication exchanges to evaluate the claim in November and December of 2010.  One writing Gallagher sent to Moran indicated that "no act of any company representative while investigating, negotiating settlement of the claim, or defending a law suit shall be construed as waiving any company rights."  Def.'s SOF, ¶ 21.

Netherlands hired a building consultant, Frank Antonucci ("Antonucci"), who inspected the property on December 9, 2010.  Antonucci estimated repair costs to patch a 1000 square foot section of the roof to be between $40,000 to $45,000.  Id. ¶¶ 23, 25.  Moran received a copy of the estimates on or about January 26, 2011.  Id. ¶ 26.  Netherlands also made payment to Moran based on those estimates in the amount of $32,603, which is a figure representing repair costs and costs Moran incurred cleaning, less the $25,000 deductible under the policy.  Def.'s SOF, ¶ 27.

Moran disputes both the validity of the assessment and the square footage of the roof that needed repair.  Moran contends the entire section of the roof needed to be replaced, rather than a portion merely repaired.  Def.'s SOF, ¶ 31.  Attempting to address this dispute, the Parties engaged in telephone conversations and e-mail correspondence during the first several months of 2011.

After approximately two months of unsuccessful communication between the parties attempting to arrange a meeting between their roofing consultants, in early May 2011, Antonucci spoke with a roofing consultant Moran hired, George Hutchinson ("Hutchinson").  The parties dispute the outcome of this conversation. Moran maintains that Antonucci manifested agreement with Hutchinson's assessment that the entire slope of the roof needed to be replaced.  Def.'s SOF, ¶¶

34, 37; Pl.'s SOF, ¶¶ 34–35, 37.  Netherlands maintains that Antonucci's position was that a repair could be done on a portion of the roof, as he initially indicated, rather than a full replacement.  Def.'s SOF, ¶ 35.

Following this conversation, Gallagher spoke with Antonucci on May 16, 2011 and subsequently e-mailed Moran and Williams.  Gallagher indicated that, because their consultants were not in agreement on the scope of repairs, she would hire an engineer to inspect the area of damage.  Def.'s SOF, ¶ 36.  On June 1, 2011 an engineering firm and an architect performed an inspection of the Property.  Def.'s SOF, ¶ 38.  These parties authored a report, dated June 13, 2011, that expressed the opinion that repairing the roof was feasible and suggested a replacement of approximately a 1,125 square foot area of roofing panels.  Def.'s SOF, ¶ 39.  Moran disputes the validity of the report's conclusions, but not the fact that the examination occurred.  Pl.'s SOF, ¶ 39.

Based on the report, Gallagher determined no further payment was due, and forwarded the report with that message to Moran on June 27, 2011.  Def.'s SOF, ¶ 40.  After not receiving a substantive response from Moran, Gallagher closed the file on September 26, 2011.  Def.'s SOF, ¶ 42.  Moran filed suit against Netherlands on June 15, 2012.

## II.   DISCUSSION

### A.    Preliminary Legal Standards

#### 1.    Jurisdiction

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Because the Court sits in diversity, Pennsylvania substantive law applies to the claims.  See, e.g., Erie R. Co. v. Tompkins, 304 U.S. 64, 91–92 (1938).

#### 2.    Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A fact is "material" where it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is "genuine" where "the evidence is such that a reasonable jury," giving credence to the evidence favoring the nonmovant and making all inferences in the nonmovant's favor, "could return a verdict for the nonmoving party." Id.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment.  In re Bressman, 327 F.3d 229, 237 (3d Cir. 2003) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)).  The moving party may satisfy this burden by either (i) submitting affirmative evidence that negates an essential element of the nonmoving party's

claim; or (ii) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331.

Where the moving party's motion is properly supported, the nonmoving party, to avoid summary judgment in his opponent's favor, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250. For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed must" be supported by "materials in the record" that go beyond mere allegations, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1); see also Anderson, 477 U.S. at 248–50.

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2003). Furthermore, "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . .

8

consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2).

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court. BWM, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### B.   **Substantive Arguments**

### 1.   Moran's Assumpsit Claim Survives Summary Judgment

Moran asserts an assumpsit action for Netherlands' alleged breach of the parties' insurance contract.  Netherlands argues in its Motion for Summary Judgment that Moran's claim is barred because the insurance policy provides a two year limitations provision for filing suit and Moran did not file suit within the stated period.[1]  Def.'s Br. Supp. Mot. Summ. J. 3–4, Jan. 7, 2013, ECF No. 15 [hereinafter Def.'s Br.].  Moran counters that the limitations provision is not enforceable for a number of reasons, including: it was not part of the contract between the parties; it is substantively unconscionable and against public policy; even if the clause was a valid part of the contract and was not unconscionable,

---

[1] The loss occurred on August 14, 2009.  According to the limitations provision, then, suit would need to be filed no later than August 14, 2011.  Plaintiff did not file suit until June 15, 2012.

Netherlands is estopped from asserting the statute of limitations due to its failure and delay in investigating the claim; and that Netherlands must demonstrate prejudice for the limitations clause to block Moran's claim.  Pl.'s Br. Opp'n Def.'s Mot. Summ. J. 6–11, Jan. 25, 2013, ECF No. 19 [hereinafter Pl.'s Br.].  The Court addresses these arguments seriatim.

> a.   *Material Facts Remain in Dispute Concerning Whether the Contract Included the Limitations Provision*

Pennsylvania maintains a four-year statute of limitations that applies to most contract claims.  See, e.g., McElhiney v. Allstate Ins. Co., 33 F. Supp. 2d 405, 406 (E.D. Pa. 1999) (Bartle, J.) (citing 42 Pa. C.S.A. § 5525).  Absent a statutory prohibition, however, parties may contract for a shorter limitations period as long as it is reasonable.  Id. (citing Marshall v. Aetna Cas. & Sur. Co., 643 F.2d 151, 152 (3d Cir. 1981); Lardas v. Underwriters Ins. Co., 426 Pa. 47, 231 A.2d 740, 741–42 (1967)).  Numerous courts have held that contractual limitations period requiring the filing of suit within one year after the inception of loss or damage are reasonable.  See id. at 46; see also Fennell v. Nationwide Mut. Fire Ins. Co., 412 Pa. Super. 534, 542, 603 A.2d 1064, 1068 (Pa. Super. Ct. 1992) (discussing the "unbroken line of authorities upholding" one-year limitations clauses); Hosp. Support Servs., Ltd. v. Lumbermens Mut. Cas. Co., No. CIV.A. 88–2963, 1989 WL 32771, *4 (E.D. Pa. Apr. 3, 1989).

In order for a clause to be included in a contract between two parties, including a limitations clause, the parties to a contract must agree to its terms.  <u>See MetroClub Condo. Ass'n v. 201-59 N. Eighth St. Assocs., L.P.</u>, 2012 Pa. Super. 122, 47 A.3d 137, 144 (Pa. Super. Ct. 2012) <u>appeal denied</u>, 57 A.3d 71 (Pa. 2012) (citing RESTATEMENT (SECOND) OF CONTRACTS, § 17(1) (1979)).  A contract may consist of several documents, some of which are incorporated into the contract by reference in the primary document on which the parties manifest their assent.  <u>See Target Sportswear, Inc. v. Clearfield Found.</u>, 327 Pa. Super. 1, 474 A.2d 1142, 1147 (Pa. Super. Ct. 1984) (citing RESTATEMENT (SECOND) OF CONTRACTS, § 132 (1981)).

"As long as the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained beyond doubt, the parties to a contract may incorporate contractual terms by reference to a separate, noncontemporaneous document."  11 RICHARD A. LORD, WILLISTON ON CONTRACTS § 30.25 (4th ed. 1999) (cited by <u>Standard Bent Glass Corp. v. Glassrobots Oy</u>, 333 F.3d 440, 447 n. 10 (3d Cir. 2003)).  Nevertheless, "in order to uphold the validity of terms incorporated by reference, it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms." 11 WILLISTON ON CONTRACTS § 30.25.

In the case before the Court, it is undisputed that the contract document in

Moran's possession referenced the ancillary document containing the limitations

clause.  The relevant page, titled "Commercial Property Coverage Part

Declarations," states "Forms and Endorsements applying to this Coverage Part and

made part of this policy" and proceeds to list a number of forms with their titles,

descriptions, and form citation numbers.  Pl.'s Compl., Ex. A., at 18.  This

statement purports to incorporate the contents of these forms as terms of the

contract between the parties.

One of the forms listed is titled "Commercial Property Conditions" and is

accompanied by a form citation number.  Id.  The limitations clause at issue is

contained on this ancillary document, which states:

> D.  LEGAL ACTION AGAINST US
>
> No one may bring a legal action against us under this Coverage
> Part unless:
>
> 1.  There has been full compliance with all of the terms of
>     this Coverage Part; and
>
> 2.  The action is brought within two (2) years after the date
>     on which the direct physical loss or damage occurred.

Def.'s SOF, Ex. C, at 196.

Consequently, the unambiguous language of these two documents construed

together effectively establishes a limitations clause of two years from the date on

which the direct physical loss or damage occurred.   See, e.g., Target Sportswear,

Inc., 474 A.2d at 1147.  This clause is not so inconspicuous that Moran, a

sophisticated party presumably accustomed to complex contractual relationships,

should not be held liable by the terms of its contract, if this term was in fact a part

of that contract.   See, e.g., John B. Conomos, Inc. v. Sun Co., Inc. (R&M), 2003

Pa. Super. 310, 831 A.2d 696, 708, 708 (Pa. Super. Ct. 2003) ("Absent fraud or

unconscionability, courts should not set aside terms on which sophisticated parties

agreed.").

The parties disagree, however, on the material fact regarding whether Moran

ever obtained this ancillary document containing the suit limitation provision.

Netherlands submits by sworn affidavit that at the time Moran was first insured by

Netherlands in 2006, all declarations pages, forms, and endorsements, including

the document containing the limitations clause, were sent to Moran's independent

insurance agent to be distributed to the insured.  Def.'s Reply Br., at 1.  Each time

the policy was renewed annually thereafter, Netherlands sent the declarations

pages and any changed or new endorsements to the insurance agent.  Id.

Moran submits, through the sworn affidavit of its president, John D. Moran,

Jr., that the policy it received from Netherlands through Williams did not contain

the ancillary document containing the limitations clause.  Pl.'s SOF, ¶ 7; Moran

13

Aff., ¶ 5.  Consequently, Moran argues the limitations clause did not constitute part of the contract and Moran is not bound by its terms.

Moran's evidence in forms expressly sanctioned by Rule 56(c) effectively establishes there is a genuine dispute on this material and dispositive fact.  FED. R. CIV. P. 56(c)(1), (4).  Netherlands did not show "that the materials cited do not establish the . . . presence of a genuine dispute."  FED. R. CIV. P. 56(C)(1)(B). Therefore, this issue is not amenable to summary judgment because, viewing the facts in the light most favorable to the non-moving party, a disputed material fact remains to be submitted to a factfinder.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

> b.   *The Suit Limitations Clause Is Not Unconscionable and Does Not Violate Public Policy*

Moran's arguments, that the suit limitations clause violates public policy because it begins to run on the date of damage rather than the date of the alleged breach and that it was an "unfair surprise," are without merit.  Moran submits that the suit limitation provision violates 13 Pa. C.S.A. § 2725, a section of the Uniform Commercial Code as adopted by Pennsylvania entitled "Statute of Limitations in Contracts for Sale."  Although this section pertains to sales of goods, "it has been held that the sale of insurance and contracts of insurance are within the scope of the unconscionability section of the Uniform Commercial Code."  Bishop v.

14

Washington, 331 Pa. Super. 387, 480 A.2d 1099, 1094 (Pa. Super. Ct. 1984)
(internal citations omitted).

Suit limitations clauses of this nature, however, are quite common in
insurance contracts.  Pennsylvania courts have upheld them even in cases where
the insured is an individual as opposed to a sophisticated corporate party.  See, e.g.,
McElhiney, 33 F. Supp. 2d at 406.  Moreover, many courts have upheld suit
limitations provisions in insurance contracts that begin to run on the date the
damage occurred, like the provision at issue here.  See, e.g., Toledo v. State Farm
Fire & Cas. Co., 810 F. Supp. 156, 157–58 (E.D. Pa. 1992) (citing Gen. State Auth.
v. Planet Ins. Co., 464 Pa. 162, 346 A.2d 265, 267 (1975); Lardas v. Underwriters
Ins. Co., 426 Pa. 47, 231 A.2d 740, 741 (1967) (holding plaintiff's claim barred by
suit limitations provision requiring suit to be brought within twelve months next
after inception of the loss when plaintiff did not even discover the damage until
two years after it occurred).  Consequently, it is well established that suit
limitations clauses like the provision at issue here are not unconscionable under
Pennsylvania law.  See id.

The suit limitations clause at issue was not an "unfair surprise" if Moran was
provided the documents containing the clause at the time of assent to the contract.
See, e.g., Bishop, 480 A.2d at 1094.  The language of this contract, both on the

page incorporating the ancillary documents into the contract and in the limitations clause itself, is clear and precise.  It does not constitute an unfair surprise to a sophisticated party, like Moran—thus, the clause is not unconscionable.  See id. Moran should be held to the unambiguous terms of the contracts it assents to, if those terms were part of that contract.

### c.    *Estoppel Does Not Apply*

Moran argues that Netherlands should be equitably estopped from asserting its two-year limitations clause as a bar to suit because Netherlands allegedly delayed in beginning the investigation, delayed in completing its investigation and stating its position on June 27, 2011, and delayed until January 2011 to make any payment.  Pl.'s Br., at 11.  The Court is not persuaded by these arguments and the undisputed facts demonstrate that estoppel should not apply.

To establish a right to equitable estoppel based on fraud or concealment, a plaintiff must show "the defendant causes the plaintiff to relax his vigilance or deviate from his right of inquiry."  Molineux v. Reed, 516 Pa. 398, 402 532 A.2d 792, 794 (1987) (quoting Schaffer v. Lazelere, 410 Pa. 402, 405, 189 A.2d 267, 269 (1963)) (internal quotations omitted).  "The plaintiff must clearly rely upon the defendant's conduct or representations in forebearing [sic] to sue."  Melhorn v. AMREP Corp., 373 F. Supp. 1378, 1381 (M.D. Pa. 1974).  The reliance must be

justifiable and in good faith, and "the plaintiff must be reasonably diligent in seeking out all relevant facts." Id.

Moreover, "the burden of proving such fraud or concealment, by evidence which is clear, precise and convincing, is upon the asserting party." Id. "In a motion for summary judgment the burden is on the plaintiff to present facts . . . which if true would require a court as a matter of law to estop the defendant from asserting the statute of limitations." Melhorn, 373 F. Supp., at 1380 (quoting Burke v. Gateway Clipper, Inc., 441 F.2d 946, 948–49 (3d Cir. 1971)) (internal quotations omitted).

In this case, although Moran reported the damage to Williams within one day of the fire, Moran admitted it did not file an insurance claim for more than a year after that. Within two days of receiving the filed claim, Netherlands began the process of investigating the claim and the parties were in continuous communication. Moreover, Netherlands sent a notice to Moran reiterating that its rights under their contract remained in force. Throughout the period of investigation, the record demonstrates Netherlands reasonably responded to Moran's communications. Both parties did miss several phone calls, which were acknowledged and eventually returned.

Significantly, Netherlands completed its investigation and provided notice to

17

Moran on June 27, 2011.  The limitations period did not expire until August 14,

2011.  Moran was represented by an attorney both before and during this period.

See Def.'s SOF, Ex. O, at 22.  It did not file suit until June 15, 2012 and exhibited

no reliance on Netherlands' representations or actions for failing to do so earlier.

Although it could be argued that both parties would benefit from increased

diligence and conscientiousness in their business communications, Moran did not

present evidence that Netherlands was so purposefully dilatory as to warrant the

Court's imposition of equitable estoppel as a matter of law.  See, e.g., Melhorn,

373 F. Supp., at 1382.

> d.    *Prejudice to Insured Is Not Required to Uphold a Suit
>        Limitations Provision*

Moran also argues that, under the holding in Brakeman v. Potomac, 472 Pa.

66, 371 A.2d 193 (1977), Netherlands must show prejudice in order to apply the

suit limitation provision to bar Moran's claim.  In Brakeman, the Pennsylvania

Supreme Court held that insurers must prove that they suffered prejudice to be

relieved of liability because of an insured's failure to provide timely notice of its

claim.  Brakeman, 371 A.2d at 197.  Notably, however, the United States Court of

Appeals for the Third Circuit directly addressed the question whether the

Brakeman rule applied to suit limitation provisions in Hosp. Support Servs., Ltd. v.

Kemper Grp., Inc., 889 F.3d 1311, 1316 (3d Cir. 1989).  Predicting that the

18

Pennsylvania Supreme Court would not extend the <u>Brakeman</u> rule to apply to suit limitation clauses given the trend in Pennsylvania jurisprudence and the rule's rationale, the Third Circuit held that an insurer was not required to show prejudice to enforce a suit limitation clause under Pennsylvania law.  <u>Hosp. Support Servs.</u>, 889 F.3d at 1316.

The manifest weight of subsequent cases follows this precedent and line of reasoning, provided there is no "showing that the actions of the insurer lead the insured to believe the contractual limitation period would not be enforced."  <u>Block v. Doubletree Hotels Corp.</u>, 5 F. Supp. 2d 321, 323 (E.D. Pa. 1998); <u>see also</u> <u>Napa Transp., Inc. v. Travelers Prop. Cas.</u>, 1:06-CV-1866, 2006 WL 5582216, at *2 (M.D. Pa. Nov. 20, 2006) (Conner, J.); <u>Caln Vill. Assocs., L.P. v. Home Indem. Co.</u>, 75 F. Supp. 2d 404, 410 (E.D. Pa. 1999).  The Third Circuit also noted that cases that depart from these theoretical lines have been sharply criticized.  <u>Hosp. Support Servs.</u>, 889 F.3d at 1214 (citing <u>Petraglia v. Am. Motorists Ins. Co.</u>, 284 Pa. Super. 1, 424 A.2d 1360 (1981) <u>aff'd</u>, 489 Pa. 32, 444 A.2d 653 (1982)).

Consequently, this Court follows the Third Circuit's decision in <u>Hospital Support Services</u> and the myriad courts that invoked that decision.  Netherlands need not show prejudice in order to uphold the suit limitations clause.

       2.    <u>Moran Did Not Produce Evidence Such that a Reasonable Jury Could Find Bad Faith By the Clear and Convincing Standard</u>

A plaintiff asserting an insurance bad faith claim under 42 Pa. C. S.A. §

8371[2] must demonstrate by clear and convincing evidence that: 1) the insurer

lacked a reasonable basis for its handling of a claim; and, 2) the insurer knew of or

recklessly disregarded the lack of a reasonable basis. Amica Mut. Ins. Co. v.

Fogel, 656 F.3d 167, 179 (3d Cir. 2011). "[T]he essence of a bad faith claim must

be the unreasonable and intentional (or reckless) denial of benefits." UPMC

Health Sys. v. Metro. Life Ins. Co., 391 F.3d 497, 506 (3d Cir. 2004).  Bad faith

conduct "imports a dishonest purpose and means a breach of a known duty (*i.e.*,

good faith and fair dealing), through some motive of self-interest or ill will; mere

negligence or bad judgment is not bad faith." Terletsky v. Prudential Prop. & Cas.

Co., 437 Pa. Super. 108, 125, 649 A.2d 680, 688 (Pa. Super. Ct. 1994) (quoting

BLACK'S LAW DICTIONARY 139 (6th ed. 1990)) (internal citations omitted).

---

[2] The text of the statute reads:

> In an action arising under an insurance policy, if the court finds
> that the insurer has acted in bad faith toward the insured, the court
> may take all of the following actions:
>
> > (1) Award interest on the amount of the claim from the date
> > the claim was made by the insured in an amount equal to
> > the prime rate of interests plus 3%.
> >
> > (2) Award punitive damages against the insurer.
> >
> > (3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S.A. § 8371.

In opposing a summary judgment motion on this claim, courts "must view the evidence presented in light of the [insured's] substantive burden at trial." Nw. Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005) (internal quotations and citations omitted). Accordingly, on summary judgment the plaintiff must present evidence such that a reasonable jury could find bad faith "by the stringent level of clear and convincing evidence." Verdetto v. State Farm Fire and Cas. Co., 837 F. Supp. 2d 480, 484 (M.D. Pa. 2011) (Caputo, J.) (internal quotations and citations omitted). "This heightened standard requires the insured to provide evidence so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith." Amica, 656 F.3d at 179 (internal quotations and citation omitted). Where a plaintiff fails to offer clear and convincing evidence of bad faith for summary judgment, the plaintiff's claim is properly withheld from the jury. See Oehlmann v. Metro. Life Ins. Co., 644 F. Supp. 2d 521, 528–29 (M.D. Pa. 2007) (Kosik, J.).

An insurer may defeat a bad faith claim by showing it had a reasonable basis for its actions. Amica, 656 F.3d at 179. The insurer may do so by demonstrating it conducted a sufficiently thorough review or investigation, which it used as a foundation for its subsequent decisions. See Foster v. Westchester Fire Ins. Co., CIV 09-1459, 2011 WL 4382971, at *13 (W.D. Pa. Sept. 20, 2011). The insurer

need not show that its investigation "yielded the correct conclusion or even that its conclusion more likely than not was accurate," only that its actions were reasonable.  Id.

In the case before the Court, Moran has not presented evidence such that a reasonable jury could find Netherlands acted in bad faith by a clear and convincing standard.  The three most pertinent points Moran alleges demonstrate bad faith are: Netherlands' "delay" in investigating the claim and finalizing its position; Netherlands' communications failures; and Moran's allegation that Antonucci expressed the opinion the roof may need to be replaced, rather than repaired—a fact Netherlands disputes.  See Pl.'s Compl., ¶ 1–17, 19–22; Pl.'s Br. Opp'n, at 11–12.  Netherlands demonstrates it had a reasonable basis for its actions with respect to each of these allegations.

First, as previously discussed, Netherlands began its process of investigating the claim within two days of Moran filing a formal claim.  The undisputed facts demonstrate Netherlands acted with reasonable diligence throughout the investigation of the claim.  Moreover, Netherlands made payment on the claim and gave Moran notice of its final position on the claim with reasonable diligence and well before the limitations period expired.  Given these undisputed facts, Moran cannot establish bad faith on this evidence.  See, e.g., Amica, 656 F.3d at 179.

22

Second, regarding communication failures, the record does demonstrate some lapses in communication between the parties.  The most significant communication difficulties occurred during the two-month period in which the parties attempted to arrange a meeting of their roofing consultants, Antonucci and Hutchinson.  The record further demonstrates, however, that the communication lapses were due to failures by both parties.  See, e.g., Def.'s SOF, Ex. O.

Moreover, the record shows that Gallagher acted with reasonable diligence following up missed communications and was conscious of the relative urgency. See id.  Moran offered no evidence demonstrating an ill-will, self-interest, or dishonest purpose on this point, and did not provide other evidence with which a reasonable jury could find bad faith by the clear and convincing standard.  See Foster, 2011 WL 4382971, at *14.

Third, Moran's allegation that Netherlands disregarded Antonucci's alleged belief that the roof needed to be replaced does not establish bad faith by clear and convincing evidence, because Netherlands demonstrated other reasonable bases for its actions. See Amica, 656 F.3d at 179.  Even taking the facts in the light most favorable to the non-moving party and assuming Antonucci did manifest that the roof needed to be replaced, Netherlands followed up on Antonucci's assessment with a second assessment by an architect and engineer.

23

The report from the second assessment indicated an opinion that only a subsection of the roof needed to be repaired or replaced, not the entire portion of the roof as Moran contends.  Def.'s SOF, Ex. R.  Gallagher provided that determination to Moran on June 27, 2011, and Moran did not act on it for some time.  Consequently, this assessment provided a reasonable basis for Netherlands' position on the extent of the claim and necessary repairs, even if Antonucci's assessment differed.  See Amica, 656 F.3d at 179.

Moran did not offer evidence by which a reasonable jury could find bad faith by a clear and convincing standard.  See Foster, 2011 WL 4382971, at *13. Furthermore, Netherlands demonstrated a reasonable basis for its actions at each juncture that bad faith was alleged.  See Amica, 656 F.3d at 179.  Consequently, Moran's bad faith claim is properly dismissed on summary judgment.  See Oehlmann, 644 F. Supp. 2d at 528–29.

## III.  CONCLUSION

For the foregoing reasons, Netherlands' Motion for Summary Judgment is denied in part and granted in part.  Moran's assumpsit claim survives summary judgment on disputed material facts; its bad faith claim is dismissed.

An appropriate Order follows.

BY THE COURT:


s/ Matthew W. Brann
Matthew W. Brann
United States District Judge